765 So.2d 1191 (2000)
STATE of Louisiana, Appellee,
v.
Clint William JONES, Appellant.
No. 33,657-KA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2000.
*1194 Louisiana Appellate Project by Amy C. Ellender, Indigent Defender's Office by Jesse H. Goines, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, Laura O. Wingate, Assistant District Attorneys, Counsel for Appellee.
Before NORRIS, BROWN and KOSTELKA, JJ.
KOSTELKA, J.
Clint William Jones ("Jones") was tried and convicted by a jury of attempted carjacking, La. R.S. 14:27 and 14:64.2. Jones was subsequently adjudicated a third felony habitual offender and sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence. After the denial of motions for new trial, postjudgment verdict of acquittal and to reconsider sentence, Jones now appeals the conviction and sentence on grounds of insufficient evidence to convict, ineffective assistance of counsel, and excessive sentence. We affirm.

FACTS
At approximately 10:00 p.m. on December 20, 1998, Joe Catanese ("Catanese") let his wife, Linda Catanese ("Linda"), out of their Dodge van near the front door of a grocery store located on Jewella Road in Shreveport, Louisiana. Linda entered the store and Catanese parked the vehicle about six or seven parking spaces away from the front of the store. While waiting in the unlocked vehicle, Catanese saw a black male walk by the van. A short time later, the passenger side door opened, and the same man Catanese had seen walking by got into the van and told him to drive or be killed. Catanese started the engine but maneuvered the van into a series of lunges and sudden stops in an attempt to throw his assailant into the dashboard. Catanese began struggling with the his assailant while at the same time opening the door of his van. As he did so, he fell out of the van and onto the concrete.
Meanwhile, Linda had emerged from the store and observed the van repeatedly lunging forward and stopping. She realized something was wrong, screamed for help, and ran to the aid of her husband. As Catanese fell out of the vehicle, Linda entered the van from the passenger side and began hitting the assailant. The assailant then moved into the driver's seat and attempted to drive off, still struggling with Linda who was then seeking to remove the keys from the ignition. Ultimately, Linda prevailed. As the assailant sought to escape the van, Linda grabbed his shirt collar in an endeavor to hold him for the security guard and her husband.[1] The assailant eventually pulled away and fled, but not before ripping his shirt and causing Linda to fall out of the van onto the pavement. On her back looking up from the pavement, Linda saw that the assailant was a big man"as tall as her van."
After the struggle, Linda found a black wallet in the van and gave it to Catanese. Inside the wallet was a Louisiana Identification Card ("ID")[2] issued to Jones. Catanese identified the picture on the card as the assailant and so informed the security guard. Catanese gave the wallet to the police when they arrived and again identified the person pictured on the ID as the assailant.
Corporal Mike Day ("Day"), who was assigned to investigate this matter, discovered that a person with the same name as the one identified in the wallet had prior arrests. He obtained a photograph of that person from the arrest record and placed it in a six-photo lineup of similarly featured individuals. After viewing the photographic lineup, Catanese identified the photograph of Jones as his assailant. This *1195 was the same person identified by Catanese in the ID found in the wallet.
Jones was subsequently arrested and charged with attempted carjacking.

DISCUSSION

Identity
Jones' first argument relating to insufficient evidence to convict is based upon misidentification. Jones does not deny that the crime was committed; he simply denies that he was the person who committed it.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Baker, 28,152 (La.App.2d Cir.05/08/96), 674 So.2d 1108, writ denied, 96-1909 (La.12/06/96), 684 So.2d 925. Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App.2d Cir.04/08/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12; State v. Miller, 561 So.2d 892 (La.App. 2d Cir. 1990), writ denied, 566 So.2d 983 (La. 1990).
Jones' general argument is that his constitutional right to due process was violated because the "identification procedures" employed in this case were suggestive and created a substantial likelihood of misidentification as discussed in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
Of course, Catanese first identified Jones by the ID found at the scene. Catanese then named Jones as the assailant after viewing a six-photo lineup prepared by police. Catanese also made an in-court identification of Jones. Because it is difficult to pinpoint which identification forms the basis for Jones' complaints, in the interest of justice, we will discuss the propriety of each identification.

Crime Scene Identification
The record shows that Jones filed a pro se Motion to Quash which included an argument regarding the crime scene identification of him by Catanese via the photographic ID the couple found in their van. Jones sought to quash the introduction of this identification claiming that the identification procedure was "biasly administered" through the use of a single photograph. We cannot agree.
Clearly, the record shows that it was the victims who discovered the wallet in the floor of their van. Catanese subsequently gave the wallet to Officer John Redstone ("Redstone"), the Shreveport Police Department patrolman who was dispatched to the crime scene. Catanese told both Redstone *1196 and a security guard that the photograph on the ID in the wallet depicted the man who had tried to steal the van. The wallet and ID were identified by Redstone and put into evidence at trial.
Of course, an essential requirement in any due process challenge is that the claimant must show some property or liberty interest has been adversely affected by state action. Price v. U-Haul Co. of Louisiana, 98-1959 (La.09/08/99), 745 So.2d 593; Delta Bank & Trust Co. v. Lassiter, 383 So.2d 330 (La.1980).
In this instance, issues of due process are not implicated because it was not the state, but Cantanese's wife, who found the wallet after the encounter and gave it to Catanese. Obviously, the wallet had been dropped by the assailant during the fight in the van. Any defects in an identification procedure which do not offend the defendant's due process rights go to the weight, rather than the substance, of the evidence submitted to the jury. Manson, supra. Accordingly, we discern no error in the admission of this identification at trial.

Photographic Lineup
For these same reasons, we reject Jones' argument that the six-photo lineup was unconstitutionally suggestive because Catanese's attention was focused on Jones due to his prior viewing of the single photograph of defendant at the crime scene. Jones' attempt to "bootstrap" the constitutionally sound first identification onto a second identification in which state action occurred in an attempt to invalidate the second identification is misplaced. The evidence clearly shows that police utilized a different photograph of Jones in the photo lineup. Therefore, any suggestiveness which may have occurred in the photo lineup from the victim's viewing of the photo ID at the crime scene resulted from private, not state, action. Accordingly, any undue focus by the victim upon Jones' photograph in the lineup cannot appropriately be imputed to the state and fails to implicate due process questions.
Nor can we find the photo lineup otherwise unconstitutionally suggestive or unreliable.
Day testified that he ran an arrest record check on the person identified in the photographic ID, i.e., the defendant, Clint Jones, and found that Jones had a prior arrest record. More than two weeks after the crime, on January 8, 1999, he obtained an arrest photograph of Jones from this record and compiled a lineup by placing the photograph with five other photographs of individuals with similar features. He showed the photographic lineup to Catanese. He testified that Catanese immediately identified Jones as the perpetrator of the crime, signing and dating his identification on the line-up folder. The photographic lineup was identified by Corporal Day and put into evidence at trial.
The court in Manson, supra, concluded that the "linchpin" in determining the admissibility of identification testimony is its reliability. Factors useful in determining reliability include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the witness's level of certainty; and, (5) the time between the crime and the confrontation.
A thorough review of these factors in this case shows the pre-trial identification of Jones by Catanese to have been reliable. Catanese saw the assailant prior to his opening the door and recognized him when he opened the door (the lights came on) and entered the van from the passenger side. Although a subsequent struggle ensued, Catanese had ample opportunity to clearly see the defendant's face and stature. Catanese's impressive and clear recitation of the details of the incident reflect that he was attentive, particularly when the assailant entered his van and told him to drive or be killed. Clearly, Catanese accurately identified Jones as his assailant from the photographic ID prior to the *1197 photographic lineup. His failure to give an independent description of the assailant is of no moment because the photograph presented a precise visual depiction of the person who attacked him. Moreover, his description of the assailant as a large man corroborated Linda's description. Finally, Catanese expressed no doubt that the person who entered his van was Jones. Under these circumstances, we find the photo lineup to have been reliable and the testimony relating to it appropriately entered into evidence.

In-Court Identification
At trial, Catanese was called to testify. The assistant district attorney showed Catanese the ID that had been recovered from the wallet, introduced it into evidence and asked him if the person in the photograph was the person who committed the offense. Catanese said it was. The prosecutor then asked Catanese "to take a good look around in the courtroom today, and I'd like to ask you if you sawif you see this person in court today, who did this to you?" Catanese identified Jones and, when asked if he was sure, responded that he was "positive" of his identification. On rebuttal re-direct examination, Catanese again positively identified Jones as the person who attempted to carjack his van.
An in-court identification is generally permitted provided the source of the identification is independently based. The court may consider the prior acquaintance of the witness with the accused, the length of time the witness observed the accused, and the circumstances under which the observations were made. State v. Brown, 588 So.2d 1317 (La.App. 2d Cir.1991), writ denied, 592 So.2d 1298 (La.1992); State v. Williams, 633 So.2d 332 (La.App. 1st Cir. 1993). We find no error in the admissibility of the in-court identification. Clearly, Catanese was in very close proximity to the assailant and had an obvious and extended opportunity to look at his face. He had also observed the man prior to his entering the vehicle. From this experience, he was able to positively identify Jones as the assailant without any reference to his prior photographic identifications. Under these circumstances, we find this identification to have been independently based.

Summary
Given the strength of the victim's identification and testimony and the circumstances of the offense, we find that the likelihood of misidentification was minimal. For these reasons, we find that the trial court committed no error in allowing the jury to hear evidence of both in-and out-of-court identifications.

Stolen/Lost Wallet
Jones next argues that the evidence was insufficient to convict him because the state failed to exclude the hypothesis that his wallet had been stolen and another individual committed the crime.
The evidence shows that while Jones was in jail, he made two telephone calls to Catanese asking him to drop the charges. Catanese testified that in the first telephone call Jones told him his wallet was lost two or three weeks earlier. He testified that Jones told him in the second call the wallet was lost three or four months earlier. He testified that Jones told him the wallet was lost, not stolen.
Jones testified he was not the person who attempted to carjack the Cataneses' van. He claimed his wallet had been stolen by his "associate," Patrick Jones, who was visiting his house before December 3, 1998, the date he discovered the wallet was missing. He claimed to have reported the stolen wallet to police on December 4, 1998 at 9:00 a.m.
Day testified that after Jones was arrested and read his rights, he stated his wallet was stolen, possibly by a man named Patrick Jones. The defendant denied involvement in the present offense. Jones was unable to give Day an address or phone number where Patrick Jones might be located. Jones indicated to Day *1198 that he had reported the wallet stolen between January 1 and 3, 1999 and had made an offense report over the phone. Day testified that the police maintain records of every offense report and telephone call, including information showing the particular address from which a call originates. He checked these records from November 1998 forward and testified that he found two calls from Jones' address, both of which were made to police in November regarding a disorderly person. He found no calls regarding a stolen wallet.
Clearly, Catanese identified Jones as the perpetrator at the crime scene, in a photographic lineup and in court. The jury obviously found this witness's identifications to have been credible and rejected Jones' version of the events. Considering Jones' inconsistent statements regarding the claimed loss of his identification and Day's testimony that no police report regarding his stolen identification existed, we can discern no error in this conclusion. It is the function of the jury, and not that of the appellate court, to assess the credibility of witnesses. State v. McKinney, 31,611 (La.App.2d Cir.02/24/99), 728 So.2d 1009. Moreover, in the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. Id. Accordingly, we find no merit to this portion of Jones' argument.

Ineffective Assistance of Counsel
In his second assignment of error, Jones claims that his trial counsel was ineffective for failing to object to statements made by a state witness containing prejudicial evidence of other crimes committed by the defendant. At trial, the prosecutor asked Day about his investigation of the case. Day indicated that he had reviewed the victims' statements and a list of evidence recovered from the crime scene. The evidence included the black leather wallet which contained Jones' ID. The prosecutor then asked Day, "[A]nd what did you do armed with that kind of identification? What did you do with that information?" Day responded that he researched the arrest records, found that an individual with Jones' name had previously been arrested, obtained his arrest photograph and compared it to the physical description given by the victims. When the description matched the photograph, he placed the arrest photograph into a sixman photographic lineup. Catanese identified the arrest photograph as the perpetrator of the crime.
Defense counsel made no objection to the detective's reference that Jones had been arrested at a prior time. Jones contends that when his trial counsel failed to object and request a mistrial, his performance fell below the standard of counsel guaranteed by the Sixth Amendment.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for postconviction relief ("PCR") in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La.C.Cr.P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Green, 27,652 (La.App.2d Cir.01/24/96), 666 So.2d 1302, writ denied, 97-0504 (La.10/31/97), 703 So.2d 14. However, when the record is sufficient, we may resolve this issue on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App.2d Cir.09/27/95), 661 So.2d 673; State v. Smith, 25,841 (La. App.2d Cir.02/23/94), 632 So.2d 887.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
*1199 To establish that his attorney was ineffective, the defendant first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra; State v. Moore, 575 So.2d 928 (La.App. 2d Cir. 1991). The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable professional judgment. Moore, supra.
Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26,862 (La. App.2d Cir.04/05/95), 653 So.2d 174, writ denied, 95-1398 (La.11/03/95), 662 So.2d 9.
We readily agree with Jones that Day's comments improperly referred to other crimes evidence within the purview of La. C.E. art. 404. Under these circumstances, we do agree that counsel should have objected. Nevertheless, we cannot determine that Jones has shown he was prejudiced by this omission.
We initially note we do not agree with Jones' argument that under these circumstances a mistrial was warranted under the provisions of La.C.Cr. P. art. 770. This provision provides for a mistrial when the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to another crime committed or alleged to have been committed by the defendant when the evidence is not admissible. A police officer is not one of these enumerated officials. See State v. Castleberry, 98-1388 (La.04/13/99), 758 So.2d 749. Moreover, a police officer's gratuitous and unresponsive reference to other crimes evidence is not charged against the state so as to fall under La. C.Cr.P. art. 770(2). McKinney, supra.
The record shows that the prosecutor asked an open-ended question to Day. Nevertheless, the obvious intent of the inquiry was the establishment of the foundation for the introduction of the photographic lineup into evidence. Because identity was an issue in the case, the lineup formed an essential piece of the state's proof that Jones was the perpetrator of the offense. Unfortunately, the officer offered an expansive response to the question. Under these circumstances, we cannot find that the prosecutor's questioning was "... designed to place before [the] jury inadmissible evidence of another crime...." State v. Lepkowski, 316 So.2d 727 (La.1975).
Rather, La.C.Cr.P. art. 771 governs the remarks and requires only an admonition unless the prejudice arising from the remark cannot be cured by court warning. Mistrial under that section is discretionary and should be granted only where the prejudicial remarks make it impossible for the defendant to obtain a fair trial. McKinney, supra. The relevant inquiry, therefore, is whether Jones' counsel's failure to object and request a jury admonishment or mistrial so prejudiced his defense that there is a reasonable probability the outcome of the trial would have been different. In light of the overwhelming and independent evidence of Jones' guilt, we find the error to have been harmless. Catanese *1200 confidently identified Jones as the perpetrator of the crime both at the time of the offense and during trial. This positive and reliable identification alone is sufficient to support Jones' conviction. Davis, supra; Miller, supra. With the strength of the victim's testimony and Jones' own admission that he had a prior criminal record, we find that the granting of a mistrial would have been unnecessary under these facts; rather, a jury admonishment would have been the appropriate remedy for any minimal prejudice which might have occurred from the testimony. Under these facts, it is not reasonably probable that a jury admonition to disregard the testimony would have resulted in Jones' acquittal. Without a showing of prejudice, Jones cannot demonstrate that his representation at trial was constitutionally ineffective. We find no merit to this argument.

Excessive Sentence
Jones' final argument is that the mandatory life sentence imposed upon him in this case is excessive. He specifically claims that the trial court failed to adequately comply with the provisions of La. C.Cr.P. art. 894.1 and neglected to refer to any factors which would particularly justify the imposition of the mandatory life sentence.
The trial court adjudicated the defendant as a third felony offender based on the following convictions: (1) unauthorized entry of an inhabited dwelling on August 19, 1993; (2) two counts of simple burglary of an inhabited dwelling on August 4, 1996; and (3) attempted carjacking on June 23, 1999. Pursuant to La. R.S. 15:529.1(A)(1)(b)(ii), if the present or previous conviction is defined as a crime of violence, a third felony offender shall be imprisoned for the remainder of his natural life without the benefit of parole, probation, or suspension of sentence. Attempted carjacking is defined as a "crime of violence." La. R.S. 14:2(13)(dd). Therefore, for Jones, a life sentence without benefits is mandatory.
We first note that because the trial court imposed a mandatory sentence, a La.C.Cr.P. art. 894.1 factor articulation is not mandated and would be an exercise in futility. State v. Sims, 32,461 (La. App.2d Cir.10/27/99), 745 So.2d 151, writ denied, 99-3384 (La.05/12/00), 762 So.2d 11; State v. Koon, 31,177 (La.App.2d Cir.02/24/99), 730 So.2d 503; State v. Williams, 445 So.2d 1264 (La.App. 3d Cir. 1984), writ denied, 449 So.2d 1346 (La. 1984). We, therefore, reject that portion of Jones' argument.
Moreover, the definition of criminal conduct and the provisions of penalties for such conduct is a purely legislative function. State v. Norris, 32,941 (La. App.2d Cir.03/01/00), 754 So.2d 362. Pursuant to this function, the legislature enacted the habitual offender statute which has been held, on numerous occasions, to be constitutional. State v. Johnson, 97-1906 (La.03/04/98), 709 So.2d 672. Since that statute in its entirety is constitutional, the minimum sentences it imposes on recidivists are presumed constitutional. Id.
Although a punishment required by statute may constitute excessive punishment, the appellate courts of this state have recognized that declaring a sentence under the Habitual Offender Law constitutionally excessive should be a rare act, not a commonplace practice. State v. Dorthey, 623 So.2d 1276 (La.1993).
In order to successfully rebut the presumption that the mandatory minimum sentence is constitutional, a defendant must clearly and convincingly show he is exceptional, which in this context means that because of unusual circumstances, this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Norris, supra. Additionally, in determining whether Jones has met his burden, the trial judge must consider that the goals of the Habitual Offender Law are to deter *1201 and punish recidivism. Id. Finally, it must be emphasized that the departure downward from the minimum sentence prescribed under the Habitual Offender Law should occur only in rare instances. Id.
After close scrutiny of the record before us, we cannot find that Jones is the "exceptional" defendant for whom downward departure from the mandatory statutory provision is required.
All three predicate offenses in this instance involved criminal conduct of the most intrusive and reprehensible kind. Jones unlawfully entered the victims' homes and automobile with the intent to commit a felony-one of those victims was his mother. The need to safeguard citizens against criminal intrusions of this nature which violate their sense of safety and security in their homes and automobiles is of paramount state concern. By committing three offenses of this nature, it is clear Jones holds little respect or regard for the law proscribing these types of criminal acts. Moreover, his prior pattern of trespass included the threatening of human life in the present case. Accordingly, the sentence of life imprisonment without benefit of parole, probation or suspension of sentence does not shock this court's sense of justice.
This assignment is without merit.

CONCLUSION
In light of the foregoing, Jones' conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The security guard never entered the fray, however, apparently maintaining his post.
[2] Frequently, there is testimony referring to this ID as a driver's license. Although it appears similar to a Louisiana driver's license, it is simply a Louisiana identification card.