956 So.2d 793 (2007)
STATE of Louisiana, Appellee
v.
Clavin BIRCH, Appellant.
No. 41,979-KA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2007.
*794 Peggy J. Sullivan, Louisiana Appellate Project, Monroe, for Appellant.
Walter E. May, Jr., District Attorney, H. Russell Davis, Kenneth P. Haines, Assistant District Attorneys, for Appellee.
Before GASKINS, PEATROSS and LOLLEY, JJ.
GASKINS, J.
The defendant, Clavin Birch, was convicted by a jury of armed robbery with a *795 firearm, in violation of La. R.S. 14:64 and 14:64.3. He was sentenced to serve 30 years at hard labor without benefit of parole, probation, or suspension of sentence. The defendant appeals his conviction and sentence. For the following reasons, we affirm the conviction, vacate the sentence and remand for resentencing.

FACTS
Deb's Place is a small convenience store in Ringgold, Louisiana, serving the community near the Bienville Parish public boat launch on Lake Bistineau. On the afternoon of June 20, 2003, Shayne Rowell and Janice Flowers were working at Deb's Place. According to Mr. Rowell, they knew "about ninety-nine percent" of the store's clientele. At about 1:30 p.m., a young man came into the store whom they did not know. The man, who was later identified as Wataski Willis, came in, looked around, and went to the coolers in the back of the store to get a drink. Mr. Willis paid for the drink and left. Mr. Rowell and Ms. Flowers discussed Mr. Willis after he left and concluded that they did not know him; they also did not see a vehicle outside the store.
Sometime before 2:00 p.m., Mr. Rowell left the store and went to a house close by. Ms. Flowers remained in the store and waited on a male customer. When that customer left, just after 2:00 p.m., Ms. Flowers had commenced preparing a sandwich when she heard the store's door open. She looked up and saw two young men come into the store and approach the register. Ms. Flowers went to the register as well and asked the men if she could help them. The first man, whom Ms. Flowers later identified as Mr. Willis, produced a handgun, pointed it at Ms. Flowers, and demanded money.
Ms. Flowers opened the cash register, and as Mr. Willis took the money from the register, Ms. Flowers saw that the second man also had a handgun and was pointing it at her. She subsequently identified the second man as the defendant, Clavin "Eric" Birch. She also noticed a third man standing in the door of the store with the door half-open. This individual was later identified as Mario Owens. As Mr. Willis took the money from the register, the defendant took cigarettes and cigars. The three men then fled the store; as they ran away, Ms. Flowers heard a single gunshot.
Ms. Flowers called 911, but the robbers had already fled before deputies could arrive. No usable fingerprints were found at the scene. A local resident, Zena Mitchell, had seen the defendant's car near the store at about 1:15 p.m. She recognized the defendant and Mr. Willis, as two of the three occupants of the car. Subsequent investigation led the Bienville Parish Sheriff's Office ("BPSO") to consider the defendant, Mr. Willis, and Mr. Owens as suspects. As a result, BPSO Deputy Randy Price created photo lineups including photos of these three men.
About two days after the robbery and before Ms. Flowers had a chance to view the lineups, the defendant's father, Eddie Allums, came into Deb's Place. Mr. Allums was not affiliated with BPSO or any other investigative agency. Ms. Flowers said that when Mr. Allums came into the store, he put the defendant's photo ID down on a table in front of her and asked her if he was one of the robbers. Ms. Flowers was frightened and told Mr. Allums that she did not know; however, in fact she did recognize the defendant from the photo ID as one of the robbers. The next day, on the telephone, she told Mr. Allums that the defendant was one of the robbers.
On June 25, 2003, Deputy Price showed a lineup including Mr. Willis to Mr. Rowell *796 and Ms. Flowers; both identified Mr. Willis as the man who came into the store and bought a drink. Additionally, Ms. Flowers identified Mr. Willis as one of the robbers. Ms. Flowers was not able to identify the defendant in the first photo lineup; Deputy Price explained that the photo of the defendant in the lineup was a close-up where he had a different hair style.
Deputy Price prepared a second photo lineup including the defendant, this time with his current hairstyle, and showed it to Ms. Flowers on July 22, 2003. She identified the defendant in that lineup. She was also able to identify Mr. Owens as the other robber in a different lineup. As a result of Ms. Flowers' identifications, deputies arrested all three men, and they were charged with armed robbery. Mr. Willis and Mr. Owens reached plea agreements with the state in which they pled guilty to this offense in exchange for an agreed-upon sentence. They agreed to testify truthfully in the defendant's trial.
On January 31, 2005, Ms. Flowers signed an affidavit questioning her identification of Clavin Birch as one of the robbers. The affidavit states:
I, Janice Flowers was employed at Deb's Place on June 20, 2003, when three black males entered the store and robbed the place of tobacco and money at gunpoint.
On July 25, 2003, I identified Clavin (Eric) Birch from a photo line-up. Approximately July 23, 2003, Clavin's father, Eddie Allums, came to the store and showed me a picture I.D. of Clavin. I believe that the showing of this I.D. is what made me choose Clavin's picture on the day that the police showed me the picture to identify the robbers.
In May 2005, the defendant filed a motion to suppress Ms. Flowers' identification of him in the photo lineup. The defendant alleged that Ms. Flowers' affidavit proved that there was a substantial likelihood that she misidentified him as the perpetrator when she identified him in the second photo lineup.
The court held a hearing on the motion on August 10, 2005; the only witness at the hearing was Deputy Price. The deputy testified that Ms. Flowers was not able to identify the defendant in the first lineup. This lineup was shown to her shortly after the date when Mr. Allums showed Ms. Flowers the photo of the defendant. Deputy Price said that Ms. Flowers told him that the robbers had "poofy" hairdos; the photo of the defendant in the first lineup shows him with a flatter haircut. The deputy explained that Ms. Flowers was immediately able to pick the defendant out of a group of similar looking men when the hairstyles were more like the one the defendant had at the time of the robbery. Deputy Price said that he spoke with Ms. Flowers about the affidavit and she told him that the photo shown to her by Mr. Allums had influenced her choice on the second lineup. The court concluded that Ms. Flowers' contact with Mr. Allums was relevant only to the weight to be given her identification and denied the motion to suppress.[1]
Ms. Flowers testified at trial that the affidavit was false. During the course of the investigation, Ms. Flowers became aware that others in the community knew *797 of her identity as the victim. She explained:
Well, Mr. Eddie Allums contacted . . . a friend of mine that was living with me at the time, and said that he wanted to speak to me. And I . . . knew what he wanted. He wanted me to make a statement saying that his son's not the one that robbed me, which I refused to do. And I'd had strange vehicles coming up and down the road in front of my house  they figured out who I was. . . . I've got two children who play in the yard and I was scared. I mean, I knew that [an individual] had told me that they wanted to talk to me, wanted to talk to me, had to talk to me. And I was frightened. . . .
[An individual] had told me that Mr. Eddie Allums wanted to talk to me again, which I knew that it was the same guy that had come in and brought the picture. And we had met at the church in Ringgold and he asked me if I would make the statement to save his son. His son's going to jail and I told him that I couldn't make a statement saying that he wasn't the one. The statement says that I believe the showing of his ID which made me choose the picture on that day  well, made me choose the picture out of the ID that you just showed me. The photo lineup. Which in no way affected what I, who I chose. I mean, it was him. I knew when he showed me the ID that that was him and I knew when Mr. Randy Price brought and showed me the pictures of the six guys that that was definitely him. There is no doubt in my mind. This was to make me feel safer, to make these people leave me alone. And it did. I had got no more  I wasn't  no more strange vehicles up and down the road. You know, I stay out of Ringgold now. I still do. But, I mean, this was for safety of my children and to make me feel better.
The defendant was tried by jury. Both Mr. Owens and Mr. Willis testified at the defendant's trial and, although their stories differed in some respects, both men identified the defendant as one of the robbers. The defendant extensively cross-examined both Mr. Owens and Mr. Willis concerning the terms of their plea agreement and the benefits they received for testifying against the defendant.[2]
The jury convicted the defendant as charged. The defendant filed a motion for post-verdict judgment of acquittal, urging that the evidence against him was insufficient to prove his guilt. He also filed a motion for new trial, urging that several alleged errors during the trial prejudiced him. The court denied both motions on May 24, 2006.
The defendant waived sentencing delays, and the court sentenced him to serve 30 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The court relied in part upon a statement from the victim, that she read aloud in court, saying in part that the incident had caused her to suffer a fear of people and public places that has required her to seek therapy. The court also took into consideration the presentence investigation and a letter from the defendant in which he "refused to take responsibility for his actions in this matter." The judge did not specifically articulate the basis for his sentence under La. C. Cr. P. art. 894, nor did he specify whether any portion of the sentence was the result of the firearm enhancement under La. R.S. 14:64.3.
*798 The defendant did not file a motion to reconsider the sentence; he now appeals.

SUFFICIENCY OF THE EVIDENCE
The defendant argues that the evidence adduced at trial was not sufficient to support a conviction of armed robbery with a firearm. This argument is without merit.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Chism, 591 So.2d 383 (La.App. 2d Cir.1991). This includes the testimony of accomplices. An accomplice is a competent witness to testify against his co-perpetrator even if the prosecution offers him inducements to testify; those inducements only affect the witness's credibility. The credibility of an accomplice's testimony is not within the province of the court of appeal to decide. Rather, credibility evaluations are well within the ambit of the trier of fact. State v. Jetton, 32,893 (La. App. 2d Cir.4/5/00), 756 So.2d 1206, writ denied, XXXX-XXXX (La.3/16/01), 787 So.2d 299.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App. 2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520. Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App. 2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12. A witness's failure to identify the suspect at a pretrial lineup is not grounds to bar the in-court identification; rather, it affects the weight of the testimony. Evidence may be introduced to explain any discrepancy. State v. Long, 408 So.2d 1221 (La.1982); State v. Ford, 26,422 (La.App. 2d Cir.9/21/94), 643 So.2d 293.
To convict a defendant of armed robbery, the state is required to prove: (1) a taking (2) of anything of value (3) from a person or in the immediate control of another (4) by the use of force or intimidation (5) while armed with a dangerous weapon. La. R.S. 14:64; State v. Jeselink, 35,189 (La.App. 2d Cir.10/31/01), 799 So.2d 684. Armed robbery with a firearm, La. R.S. 14:64.3, additionally requires proof that the dangerous weapon used in the commission of the armed robbery was a *799 firearm. This court has held that the crime of armed robbery with the use of a firearm must be charged by bill of information and proven to the jury. State v. Jefferson, 40,439 (La.App. 2d Cir.1/27/06), 920 So.2d 984.
In the case sub judice, ample evidence was presented to show that the defendant committed the charged offense. The testimony of Zena Mitchell put the defendant and his accomplices in the area at the time of the offense. Ms. Mitchell saw the defendant driving his car with Mr. Willis in the passenger seat and a man she did not know in the back seat in the vicinity of the store shortly before the robbery. The seating arrangement observed by Ms. Mitchell was corroborated by Mr. Willis and Mr. Owens, who testified that they were transported to the store by the defendant in his car.
The jury also heard testimony from the victim and the defendant's two accomplices identifying the defendant in court as one of the robbers. The victim testified that the defendant was not only armed with a handgun during the commission of this offense, in which the defendant took money and tobacco products, but also that he aimed the handgun at her during the course of the robbery. The state further presented the testimony of Mr. Willis and Mr. Owens concerning the way the robbery was carried out with the defendant. Although there were some inconsistencies in their testimony, they both testified that all three men took part in the robbery of the store, at gunpoint, that cash and tobacco products were taken from the store, and that they drove to the defendant's house to split up the goods and money taken from the store.
The jury was fully apprised of the circumstances surrounding the victim's identification of the defendant. In particular, the jury had the opportunity to consider that the victim failed to identify the defendant in the first photo lineup. A reasonable explanation for that fact was presented at trial. The jury also considered the victim's affidavit concerning her identification of the defendant in a subsequent photo lineup and her explanation that her affidavit, casting doubt on her identification, was false. The victim testified that she signed the document due to attempts by the defendant's friends and family to influence her testimony. The jury heard the victim testify that she was sure that the defendant was one of the individuals who robbed her at gunpoint of cash and tobacco products.
The jury also heard the testimony of the defendant's accomplices concerning the favorable consideration they received by testifying against the defendant and the impact that factor had on their testimony. After considering all the testimony, the jury concluded that the defendant was the perpetrator. Under the legal standards cited above, this court cannot "second guess" the jury's conclusions based upon the credibility of the witnesses.
The record contains sufficient evidence to support the defendant's conviction in this case. When the evidence is viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of armed robbery with a firearm beyond a reasonable doubt.

MOTION TO SUPPRESS
The defendant argues that the trial court erred in failing to grant his motion to suppress the pretrial identification made by Ms. Flowers in the second photo lineup. He claims that showing Ms. Flowers two lineups was unduly suggestive. He also points out that his father showed her a single photo of him prior to her viewing of *800 the second photo lineup which influenced her identification of him. These arguments are without merit.
A defendant attempting to suppress an identification must first show that the identification procedure was suggestive, and secondly, that there was a likelihood of misidentification by the eyewitness. Even if the identification procedure was suggestive, the identification will be admissible if, under the totality of the circumstances, it is found to be reliable. State v. White, 28,095 (La.App. 2d Cir.5/8/96), 674 So.2d 1018, writs denied, XXXX-XXXX (La.11/15/96), 682 So.2d 760; XXXX-XXXX (La.6/26/98), 719 So.2d 1048.
The circumstances surrounding Ms. Flowers' identification of the defendant is set forth above. The trial court correctly concluded that the question here was the credibility of Ms. Flowers as a witness and not the traditional due-process analysis under Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).[3] As this court stated in State v. Jones, 33,657 (La.App. 2d Cir.8/23/00), 765 So.2d 1191, writ denied, 2000-2779 (La.6/29/01), 794 So.2d 825:
[A]n essential requirement in any due process challenge is that the claimant must show some property or liberty interest has been adversely affected by state action. . . .
In this case, as in State v. Jones, supra, issues of due process are not implicated because it was not the state, but the defendant's father, who showed the victim a single picture of the defendant and inquired whether he was the perpetrator of this offense. Where no state action is involved, there are no due process implications. Any defects in an identification procedure which do not offend the defendant's due process rights go to the weight, rather than the substance, of the evidence submitted to the jury. State v. Jones, supra.
In State v. Jones, supra, the victims of an attempted carjacking struggled with the defendant and he fled. The victims found Jones' wallet in their vehicle containing his photo ID. This court found that viewing the single photograph of the defendant was not the result of state action and therefore did not violate due process. We also held that viewing the photo ID did not make viewing of a subsequent photo lineup unduly suggestive. Even single photo identifications involving state action are not inadmissible per se. See State v. Goldston, 35,271 (La.App. 2d Cir.12/5/01), 804 So.2d 141.
There is no evidence that the police in this case had any connection to the actions of the defendant's father. Further, in compiling the photo lineups, there is no showing that the state used the ID photo of the defendant that the defendant's father showed Ms. Flowers. The pretrial identification resulted from private, not state action. In the absence of state action, the question became one of credibility, not admissibility of the identification. Further, there is no showing that the photo lineups were suggestive. Accordingly, the trial court correctly denied the pretrial motion to suppress.[4]

*801 EXCESSIVE SENTENCE
The defendant argues that the 30-year sentence without benefit of parole, probation, or suspension of sentence constitutes an excessive sentence under the facts and circumstances of this case. Because we find as error patent that the sentence imposed in this case is indeterminate, necessitating that the sentence be vacated and the matter remanded for resentencing, we pretermit discussion of the defendant's argument regarding excessiveness.
The crime of armed robbery with the use of a firearm under La. R.S. 14:64.3 is a more serious form of armed robbery for which the penalty range is effectively 15 to 104 years. State v. White, 39,634 (La.App. 2d Cir.6/16/05), 907 So.2d 180, writ denied, 2005-2097 (La.3/10/06), 925 So.2d 510.[5] At the time the defendant committed this crime, La. R.S. 14:64.3 did not explicitly say, as it does now, that the additional term must be served at hard labor. Acts 2006, No. 208, § 1.
In the instant case, the jury found the defendant guilty as charged of armed robbery with a firearm, but the trial court did not specify what portion, if any, of the defendant's 30-year sentence was imposed under La. R.S. 14:64.3. La. C. Cr. P. art. 879 requires a determinate sentence. In the absence of a specification that the defendant's sentence includes a term under La. R.S. 14:64.3, Birch's sentence is indeterminate. See State v. Weaver, 38,322 (La.App. 2d Cir.5/12/04), 873 So.2d 909; State v. Price, 04-812 (La.App. 5th Cir.3/1/05), 909 So.2d 612. Therefore, we vacate the sentence and remand for resentencing according to law for clarification of whether the defendant's sentence includes any additional punishment under La. R.S. 14:64.3. The trial court is instructed to consider State v. Williams, XXXX-XXXX (La. App. 1st Cir.3/28/02), 815 So.2d 378, writ denied, XXXX-XXXX (La.5/9/03), 843 So.2d 388, noting that, at the time the defendant's sentence was imposed, La. R.S. 14:64.3 did not provide for the enhanced penalty to be served at hard labor.
At resentencing, the trial court should take cognizance of La. C. Cr. P. art. 894.1 in sentencing the defendant and should state those factors that form the basis for the defendant's sentence.

CONCLUSION
For the reasons stated above, we affirm the conviction of the defendant, Clavin Birch, for armed robbery with a firearm, but vacate the sentence imposed and remand for resentencing in accordance with this opinion.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
NOTES
[1] We note a discrepancy in the dates in the affidavit executed by Ms. Flowers. She was shown photo lineups on June 25, 2003 and July 22, 2003. She was not shown a lineup on July 25, 2003, as alleged in her affidavit. Ms. Flowers did not identify the defendant until July 22, 2003. However, she stated that Mr. Allums visited her a couple of days after the robbery, which occurred June 20, 2003. Therefore, the statement in the affidavit that Mr. Allum's visit occurred on July 23, 2003 also appears to be in error.
[2] Mario Owens pled guilty with an agreed-sentence cap of 10 years imprisonment, and Wataski Willis was sentenced to an agreed 15-year term.
[3] Manson v. Brathwaite, supra, held that reliability is the linchpin in determining the admissibility of identification testimony. The factors to be considered include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
[4] Interestingly, the defendant did not object to Ms. Flowers' in-court identification of the defendant and did not argue that the in-court identification was tainted by the allegedly suggestive lineup.
[5] La. R.S. 14:64 provides that whoever commits the crime of armed robbery "shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years without benefit of parole, probation, or suspension of sentence." At the time of the defendant's conviction on January 25, 2006, La. R.S. 14:64.3 provided that the enhanced penalty for armed robbery committed with a firearm was imprisonment for an additional five years without benefit of probation, parole, or suspension of sentence, to be served consecutively to the sentence imposed under La. R.S. 14:64.