# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1440

STATE OF LOUISIANA

VERSUS

DAVIN RYAN HANKS

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 123776
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

**********

## JOHN E. CONERY
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, and John E. Conery, Judges.

**AFFIRMED.**

**Christopher Albert Aberle**
**Louisiana Appellate Project**
**Post Office Box 8583**
**Mandeville, Louisiana 70470**
**(985) 871-4084**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Davin Ryan Hanks**

**Davin Ryan Hanks**
**Winn Correctional Center Elm C-2**
**Post Office Box 1260**
**Winnfield, Louisiana 71483-1260**
**(318) 628-3971**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Davin Ryan Hanks**

**Michael Harson**
**District Attorney**
**15th Judicial District Court**
**Post Office Box 3306**
**Lafayette, Louisiana 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Allan P. Haney**
**Assistant District Attorney**
**15th Judicial DistrictCourt**
**Post Office Box 4308**
**Lafayette, Louisiana 70502-4308**
**(337) 291-7009**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**CONERY, Judge.**

Defendant, Davin Ryan Hanks, appeals his conviction for second degree kidnapping, a violation of La.R.S. 14:44. After reviewing the record, we affirm the conviction.

## FACTS

On February 8, 2009, the victim, Megan Colon, went to the Belly to Belly bar in Lafayette to meet a friend who worked there. She sat in her car, "putting [her] stuff in [her] purse," when someone opened the car door, grabbed her neck, and dragged her into the passenger seat. The victim's written statement given to the investigating officer on the night of the incident showed that Defendant poked her with something, but at the time, she did not know what it was. She verbally told the officer that Defendant brandished a knife and poked her with it during the attack. She testified at trial that Defendant poked her with a knife that looked a lot like the knife found on the seat of her car after Defendant's arrest.

After forcing the victim to the passenger seat, Defendant began driving and asking her a lot of questions. Defendant asked where she lived and indicated, at first, that he would release her there, but then he passed by her apartment without stopping. He then told the victim he would not let her go because she would call the cops. She tried to unlock the car door, but he grabbed her. The victim then tried to get out of the car at a red light, but he pulled her back inside and started choking her. She tried to escape at another red light, but Defendant pulled her, and she "was still half way out the car." Finally, her shirt ripped as Defendant was holding her by it, and she was able to get away and call the police.

After the victim was free and able to call the police, the responding officer put out a BOLO[1] for her vehicle. Around the same time that the responding officer put out the BOLO, Officer Chris Cormier of the Lafayette Police Department stopped a black Honda Accord in the same area because the driver was operating it erratically. Corporal Aaron McNair of the Lafayette Police Department came upon the traffic stop and saw a six-inch blade knife on the driver's seat that he identified as Exhibit S-17 at trial. While at the traffic stop, Officer Cormier and Corporal McNair "heard a dispatch sending two patrol units to a report of an armed robbery in progress with a knife," and Corporal McNair left to go to the scene of the robbery. Another dispatch gave "some information about a victim saying she was robbed with a knife and the person stole her car in the process." The officers responding to the robbery contacted Officer Cormier and informed him that they believed the vehicle he stopped was the vehicle that was taken, a dark Honda Accord. Officer McNair took the victim to the scene of the traffic stop, where she identified Defendant as her assailant. She again identified Defendant at trial as the man who had kidnapped her at knifepoint. She claimed she had never seen Defendant before the night of the incident.

Sergeant Dewitt Dwayne Sheridan testified he took the photographs that were introduced into evidence showing a knife on the seat of the car. When asked whether anyone moved the knife to the driver's seat of the car, Sergeant Sheridan replied, "[n]ot to my knowledge. Sometimes we secure an item on the seat and we ask where the item was located. We take the picture and then I put the item back where they found it." Sergeant Sheridan said, regarding this occasion, "[i]t could have happened. We dealt with a knife, a weapon." Defendant's counsel asked

---

[1] "Be on the lookout."

Sergeant Sheridan if he recalled why a picture taken a few minutes earlier showed car keys on the seat while the picture taken later showed the knife and not the keys. He replied, "I don't have that recollection with the situation and I suppose we saw the knife. The officers will tell me where it was located so we can deal with the exact location."

Jamie LeBlanc testified at trial that she dated Defendant "[o]ver a year but most of it was while [they] were both in jail." She testified that Defendant told her he stole the car and put a knife to the victim's cheek to get her into the car.

The victim testified at trial that Defendant had a knife when he got in the car. She "didn't look at it good," but she said, "[i]t was metal and it was black." She could not say whether the metal and black knife admitted into evidence at trial was the *exact* same knife Defendant used, but it looked like it. She denied all questions from Defendant's counsel suggesting that she met Defendant at the bar and got in the car willingly with Defendant in order to purchase pills from him. The initial police report of February 8, 2009, indicates that the victim told police that Defendant was "brandishing a knife." As previously indicated, however, the victim's written statement makes no mention of a knife.

Defendant also testified at trial after the trial judge correctly explained his right not to testify. His story was that he first sold pills to the victim on New Year's Eve prior to this incident. On the night of the incident, he called the victim at work at Hooter's and arranged to sell her more pills after she finished her shift. The victim drove to the parking lot at Belly to Belly, and Defendant approached her car. He startled the victim when she opened the car door, and he "poked her sort of as a gesture to scoot over and [he] got into the driver's seat." They sat in her car, and, after a few minutes, he "produced the pills," and she gave him $100.

3

According to Defendant, the victim then offered to let him borrow her car in order for him to get more pills to sell her. He would have to return the car to her by 4:00 p.m. so she could go to work. Defendant was going to take the victim to her apartment, but she changed her mind. The victim took some of the pills and "started getting her temper . . . her attitude just changed." She then "started getting violent and difficult," and Defendant had a difficult time staying on the road while trying to calm her. When the victim jumped from the car, he looked in the rear view mirror, saw her get up, and thought "she was okay." He was planning to go back and pick her up, "driving . . . a little reckless," when Officer Cormier stopped him. Defendant said he did not make the marks on the victim's neck and back as shown in the photos taken of the victim on the night of the incident. He did not recall a knife in the car. He testified that the knife shown in the photographs filed into evidence was not his, and he did not know where it came from.

## PROCEDURAL HISTORY

Defendant was indicted for aggravated kidnapping, a violation of La.R.S. 14:44, armed robbery, a violation of La.R.S. 14:64, and unauthorized use of a vehicle, a violation of La.R.S. 14:68.4, on April 8, 2009. The State severed the charge of unauthorized use of a vehicle and tried the aggravated kidnapping and armed robbery charges together.

Defendant originally pled not guilty to all charges, but he changed his plea to not guilty and not guilty by reason of insanity on November 3, 2009. The trial court found Defendant competent to stand trial on March 1, 2012. Defendant properly waived his right to trial by jury and went to trial before the judge alone on March 30, 2012.

4

The trial judge rendered a verdict of guilty of the lesser offense of second degree kidnapping and not guilty of armed robbery. On September 24, 2012, he sentenced Defendant to forty years at hard labor, with the first two years to be served without benefit of probation, parole, or suspension of sentence. Defendant filed a timely appeal.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find no errors patent.

## DISCUSSION

**Ineffective Assistance**

Defendant first argues that counsel rendered ineffective assistance by failing to object to the improper elicitation of prejudicial details of his prior armed robbery conviction. He contends that counsel should have objected to the State's questions or moved for a mandatory mistrial. Counsel's failure to do so led the trial judge to improperly find that Defendant was armed with a dangerous weapon during this offense. Without that finding, Defendant argues, he could be convicted only of simple kidnapping. Further, Defendant claims that the questions to which his counsel failed to object referred to inadmissible subject matter because he did not have proper notice of the specific evidence the State intended to use at trial.

The issue of ineffective counsel is more appropriately addressed in an application for post-conviction relief, where an evidentiary hearing can be conducted in the trial court. *State in the Interest of A.B.*, 09-870 (La.App. 3 Cir. 12/9/09), 25 So.3d 1012. However, where an ineffective assistance claim is raised on appeal, this court may address the merits of the claim if the record discloses

5

sufficient evidence to rule on it. *Id.* If this court considers a claim of ineffective counsel on appeal, Defendant must satisfy a two-part test. First, Defendant must show that counsel's performance was deficient; next, he must show the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). To show prejudice, he must establish "that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different." *State v. Jones*, 33,657, p. 11 (La.App. 2 Cir. 8/23/00), 765 So.2d 1191, 1199, *writ denied*, 00-2779 (La. 6/29/01), 794 So.2d 825 (citing *Strickland* and *State v. Pratt*, 26,862 (La.App. 2 Cir. 4/5/95), 653 So.2d 174, *writ denied*, 95-1398 (La. 11/3/95), 662 So.2d 9).

The record here is sufficient to determine whether Defendant's counsel was ineffective. It reflects the entire colloquy to which Defendant objects, and it contains the pre-trial notice informing Defendant of the State's intent to offer evidence of other crimes.

Second degree kidnapping is:

(1) The forcible seizing and carrying of any person from one place to another; or

(2) The enticing or persuading of any person to go from one place to another; or

(3) The imprisoning or forcible secreting of any person.

La.R.S. 14:44.1(B). Additionally, the victim must be:

(1) Used as a shield or hostage;

(2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;

(3) Physically injured or sexually abused;

(4) Imprisoned or kidnapped for seventy-two or more hours . . . or

6

> (5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.

La.R.S. 14:44.1(A). Defendant claims that the trial judge "likely relied on subsection (5) [of Subparagraph A]" in order to find him guilty of second degree kidnapping.

During cross-examination of Defendant, the State's attorney brought up Defendant's 1998 conviction for armed robbery:

> Q. The funny thing is that your history is more that you're a robber, right? Because you got an armed robbery conviction back in 1998, right?
>
> A. Yes, sir.
>
> Q. Yes? In fact, that armed robbery is eerily similar to this one, right? In that armed robbery you came behind a woman with a knife and you took her car, right? Isn't that right?
>
> A. Yes, it is.
>
> Q. That's right. Okay. I want to make sure this is abundantly clear. What you're saying is that although in 1998 you committed armed robbery, an armed robbery that was very similar to what happened here, that in fact, that's not what happened. That this was a drug deal. Is that what you're saying? That is your testimony?
>
> A. Well, sir, the circumstances revolving around this are different than those back in 1998. That was youthful indiscretion in '98. I mean, the circumstances surrounding this incident aren't the same as those in '98.

The record shows that the State did use the other crimes evidence during cross-examination of the defendant for impeachment purposes. Therefore, his counsel was not ineffective for not objecting. *See* La.Code Evid. art. 609.1(C). Moreover, there was ample evidence of the victim's physical injuries, as contemplated by La.R.S. 14:44.1(B)(3). The victim suffered injuries to her neck, back, and knees as a result of the kidnapping, as shown by the photos introduced at

7

trial. Thus, the evidence also supports a conviction for second degree kidnapping because Defendant forcibly carried the victim from one place to another and caused her to sustain physical injury. The record shows that the elements of second degree kidnapping are present without any consideration of the involvement *vel non* of a dangerous weapon.

Further, Defendant admits "the evidence may have been sufficient to support the conclusion that a knife was involved in the crime." Indeed, the victim's testimony, Jamie LeBlanc's testimony, and the police report clearly show that a knife was used during the commission of this crime. Hence, the failure to object to the "other crimes" evidence is not grounds for reversal as there is more than adequate evidence in the record to support that the kidnapping occurred while the victim was held at knifepoint. Defendant admitted that he used a knife in the statement he made to his girlfriend. He also admitted to using a knife in the commission of the crime in a phone call he made to "apologize" to the victim:

MISS COLON:

You stuck me with a knife in my ribs in my car. You took my car. I had to pay money to fix that old car and I lost money and I didn't know who you are. Why would you do that to me?

MALE VOICE:

I know. I know, Megan. I know. Let me explain.

MISS COLON:

Okay.

MALE VOICE:

It was a foolish mistake. You have my word that I was -- I wish I had time to explain but I'm using the phone here on the wall. I've been trying to get in touch with you to apologize and I need you to forgive me.

8

Assuming arguendo that counsel was ineffective for failing to object to improper other crimes evidence, Defendant was not prejudiced in any manner by the questioning about the details of his prior offense. The evidence is clear that the State proved beyond a reasonable doubt that the victim was physically injured during the course of the kidnapping. The victim's testimony about her struggles to free herself and Defendant's choking her was especially corroborated by the photos of her injuries taken shortly after the incident in question. Because prejudice is an essential part of a claim of ineffective assistance of counsel, Defendant's assignment of error lacks merit.

**Notice of Other Crimes Evidence**

Next, Defendant argues that evidence of the details of his prior armed robbery conviction were not admissible because the State failed to provide reasonable notice of its intent to offer the evidence. The record shows that the State filed notice of its intent to offer evidence of other crimes on May 13, 2009, and again on November 30, 2010. Defendant filed a request for a hearing pursuant to *State v. Prieur*, 277 So.2d 126 (La.1973) on May 15, 2009, but, apparently, no hearing was ever scheduled.

> [N]ot every violation of pre-trial procedures, including *Prieur* violations, requires reversal. Before a defendant can complain of such a violation, he must show prejudice. *State v. Sanders,* 93–0001, p. 14 (La.11/30/94), 648 So.2d 1272, 1284 (*citing State v. Hooks,* 421 So.2d 880 (La.1982)); *State v. Strickland,* 398 So.2d 1062 (La.1981).

*State v. Blank*, 04-204, p. 40 (La. 4/11/07), 955 So.2d 90, 124, *cert. denied*, 552 U.S. 994, 128 S.Ct. 494 (2007). For the same reasons discussed above, Defendant was not prejudiced by the failure of the trial court to conduct an "other crimes" evidence hearing. The record fully supports the elements of second degree

9

kidnapping based on the physical injuries to the victim. This assignment of error lacks merit.

**Prosecutorial Misconduct**

Defendant claims in his pro se brief that the State committed prosecutorial misconduct by knowingly using and coercing testimony it knew to be false or perjured. Apparently, according to Defendant, because the victim's written statement, given at the time of the offense, failed to mention that Defendant had a knife and that she offered him money, her testimony about those matters amounted to the State's procurement and use of testimony the State knew to be false or perjured. Defendant seems to argue that any testimony or questioning about anything outside the victim's written statement was improper, false, and coerced. Absent this improper testimony, Defendant believes "[t]here is a reasonable probability that the District Court would have been constrained to order a mistrial or to find [Defendant] guilty of simple kidnapping."

Defendant cites no law or jurisprudence that limits the scope of questioning of a witness to what was contained in his/her previous written statement. His argument seems to be simply that the victim did not tell the truth.

The factfinder's role is to weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than insuring the sufficiency evaluation standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979), "the appellate court should not second-guess the credibility determination of the trier of fact." *Ryan*, 969 So.2d at 1270 (quoting *State v. Lambert*, 97-64 pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27).

The trial judge specifically mentioned he "didn't believe a word that came out of [Defendant's] mouth." Apparently, he found the victim credible. Defendant

has offered nothing to support his argument or to challenge the trial judge's credibility determinations.  This assignment of error lacks merit.

**Trial Transcripts**

Defendant contends the trial transcripts are flawed and deficient and are missing several objections made by defense counsel as to the State's leading of its witness.  Defendant does not identify any location in the record where these alleged omissions occurred.  He does not indicate any way in which he was prejudiced, even if his argument is true.  This assignment of error lacks merit.

## DISPOSITION

For the reasons stated above, we affirm the conviction of Defendant, Davin Ryan Hanks, for second degree kidnapping.

**AFFIRMED.**