892 So.2d 28 (2004)
STATE of Louisiana
v.
Brian JOHNSON, a/k/a Brian Major.
No. 2004-KA-0178.
Court of Appeal of Louisiana, Fourth Circuit.
December 8, 2004.
*29 Eddie J. Jordan, Jr., District Attorney, Clare Adriana White, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge DENNIS R. BAGNERIS, SR.).
PATRICIA RIVET MURRAY.
Brian Johnson, also known as Brian Major, appeals his convictions and sentences for two robbery offenses. For the reasons that follow, we affirm his convictions and sentences.

STATEMENT OF THE CASE
On June 14, 2001, the State filed a bill of information charging Mr. Johnson with one count of first degree robbery, a violation of La. R.S. 14:64.1, and one count of simple robbery, a violation of La. R.S. 14:65. After Mr. Johnson appeared for arraignment on June 20, 2001, the court set the matter for a pretrial motion and preliminary hearing, which was conducted on August 3, 2001. At that time, the court denied the motion to suppress identification as to both counts, found no probable cause as to the first degree robbery charge, and found probable cause as to the simple robbery count.
On June 4, 2002, a jury trial was held as to both counts, and the twelve-person jury returned a verdict of guilty as charged on the count of first degree robbery and a verdict of attempted simple robbery as to the second count. On June 13, 2002, the court sentenced Mr. Johnson to ten years on the first count, first degree robbery, and three years at hard labor on the second count, to run concurrently. The State subsequently filed a multiple bill as to the first count. On April 22, 2003, after a hearing, the court found Mr. Johnson to be a second offender. The court vacated the previous sentence and resentenced him to twenty years at hard labor. Mr. Johnson subsequently moved for an out of time appeal, which the trial court granted.

STATEMENT OF THE FACTS
Mr. Johnson was convicted for his participation in two robberies that occurred at the Friendly Food Store at 2704 LaSalle Street in New Orleans. The first incident occurred on April 26, 2001. The store's owner, Van Do,[1] testified at trial that she was working on that date when a light-skinned *30 man reached into the cash register, but she was not sure that he took any money out of the register. The thief was with a second man, and the two men fled together. She described the men by their skin tones, one dark and one light-skinned. She identified Mr. Johnson as the dark-skinned man. The light-skinned man was the one who reached into the register. She further testified that her employee, Danny Pilot, was present during the incident.
On May 7, 2001, Ms. Do was again at the store when it was robbed, but this time her daughters Xuan Tran and Uyen Tran were also there with her. Ms. Do testified that she had gone to the restroom, leaving her daughters to run the cash register, when she heard a noise. She looked out and saw Mr. Johnson holding a gun on one of her daughters. Ms. Do remained in hiding until Mr. Johnson, who was again accompanied by the light-skinned man, had left the store, and then she called 911.
Approximately two weeks later Ms. Do was at the store with her employee Mr. Pilot when he suddenly told her that he could see the man who had robbed the store standing by the park across the street. The police were called, and responded. Shortly thereafter, the police asked Ms. Do to view Mr. Johnson, and she identified him as the robber.
In further testimony at trial, Ms. Do testified that Mr. Johnson and his accomplice entered and exited the store several times on April 26th. She was nervous and turned on the store's surveillance camera. She later turned the tape over to the police. She insisted that her employee Mr. Pilot was present in the store stocking the cold drink cooler when the robbery occurred. She also testified that the police later brought the tape back to her store and asked her to view it with them; she pointed out the two men involved in the robbery.
Mr. Pilot testified at trial about both incidents. On the first occasion, Mr. Johnson and a second man, whom Mr. Pilot described as light-skinned with sunken eyeballs and a pointed nose, came into the store several times. Then, according to Mr. Pilot, he went to a nearby seafood store and was not present during the robbery of Van Do. However, on May 7, 2001, he was inside the store working when Ms. Do's daughters were robbed. He stated that he was filling coolers in the back, and when he walked to the front, he saw Mr. Johnson with a bag over his hand taking money out of the register. On another day, Mr. Pilot saw Mr. Johnson standing near a swing set in the park across from the store; he immediately told Ms. Do, and she called the police. The police apprehended Mr. Johnson, and both he and Ms. Do identified him as the suspect with the gun on May 7, 2002.
In further testimony, Mr. Pilot stated that he told the police that the robber had a scar over his eye. He also stated that Mr. Johnson had a bag over his hand during the second incident, so he never actually saw a gun. He could not recall that Mr. Johnson had any tattoos or gold teeth.
Xuan Tran testified that she was working at her mother's store with her younger sister when it was robbed. Her mother told the girls to watch the store while she went to the restroom. Xuan Tran's sister was working the register when a man entered the store with his hand in a bag and told her to open the cash register. At first Xuan Tran's sister thought the robber was joking and told him no. The robber then said, "Oh, you think I'm playing," and walked behind the register. He pushed Xuan Tran out of the way and pointed at her sister. After Xuan Tran's sister *31 opened the cash register, he reached into the register and grabbed approximately sixty dollars. At that time, a second man, whom Xuan Tran described as light-skinned, told the robber, "Don't shoot them. They're just kids." Both men then fled.
Xuan Tran identified Mr. Johnson in court as the man who held the bag and reached into the cash register. Xuan Tran further testified that she believed that Mr. Johnson had a gun in the bag because she could see the bottom, or clip, part of it. She also stated that she noticed that he had a scar near his eye. Xuan Tran later identified Mr. Johnson's picture from a group of photographs shown to her by a police officer.
Uyen Tran, Xuan Tran's younger sister, gave testimony that was virtually the same as that of her sister. She stated that the robber came in the store and pointed a gun at her across the counter, but she thought he was playing and refused to open the register. The robber came around the counter, pushed Xuan Tran out of the way, went up to Uyen Tran, and pointed the gun at her, saying, "You think I'm playing now." Uyen Tran opened the cash register, and Mr. Johnson grabbed money out of it. While he was doing so, a light-skinned man came in and stood by the cooler; this man told Mr. Johnson not to shoot the girls because they were just little kids. Mr. Johnson then left with the money.
Uyen Tran testified that she saw a portion of the gun; the top was covered by a bag. She identified Mr. Johnson in court. She had earlier identified Mr. Johnson's picture in a photographic line-up.
Officer Edward Johnson testified that on April 26, 2001 he was assigned to the robbery investigations in the Sixth District. As part of that duty, he went to the Friendly Food Store and interviewed Ms. Do, who told him that she noticed two men loitering in the store. She had become suspicious and activated the store's security camera as well as alerted her employee. She described one man as taller and light-skinned, and the other one was shorter and dark-skinned. After all other customers had left the store, the light-skinned male approached the cash register and placed his hand behind his back, frightening Ms. Do. As he did so, the other man stood by the front door of the store. Ms. Do told Officer Johnson that the light-skinned man reached into the cash register, removed a twenty dollar bill, and then left with the dark-skinned man.
Officer Johnson further testified that he interviewed Mr. Pilot, an employee of the store, and he said that he was not actually present at the time of the robbery. However, he corroborated that the two men had been loitering and that Ms. Do had called his attention to them. Officer Johnson confiscated the surveillance tape, viewed it, then later asked Ms. Do to view it and confirm which customers were the ones who had robbed the store. Officer Johnson then had still photographs made from the tape, as well as flyers that were distributed. He identified the still photographs at trial. He explained that the actual robbery had not been caught on the surveillance tape.
During cross-examination, Officer Johnson reviewed the descriptions of the perpetrators. The description of the dark-skinned subject reflected that he was twenty-five, five feet, five inches tall, approximately 160 pounds, and had a long scar on the left side of his face and around his left eye, which might be false. Officer Johnson stated that there was no mention of gold teeth in the description of Mr. Johnson, nor was there mention of tear drop tattoos under his eye. However, Officer Johnson also stated he did not recall *32 Mr. Johnson having any tattoos on his face and that he had seen Mr. Johnson on the day of his arrest. Officer Johnson agreed that Mr. Johnson did not have a false eye. He also agreed that Ms. Do's description of Mr. Johnson's clothing did not match what was depicted on the videotape.
Detective Avery Matthews testified that he handled the armed robbery call on May 7, 2001. He interviewed the Tran girls and their mother. The description given of the robber was a dark-skinned male. After Mr. Johnson had been apprehended, Detective Matthews conducted separate photographic line-ups with the Tran girls. Each identified Mr. Johnson's photograph as that of the person who committed the robbery.
Officer Regina Barr testified that she responded to a suspicious person call on May 15, 2001, in the 2700 block of LaSalle Street. Officer Barr went to the food store and met with the owner and one of the employees; they advised her that a man standing across the street in the park had robbed the store on May 7, 2001. Officer Barr apprehended Mr. Johnson a short distance from the park, put him in her police car, and returned to the store. Ms. Do and Mr. Pilot came outside and identified Mr. Johnson as the perpetrator of the robberies.
The defense rested without calling any witnesses.

ERRORS PATENT
A review of the record for errors patent reveals two errors. First, neither the docket master nor the minute entries indicate that Mr. Johnson was ever arraigned or entered a plea, although the docket master does contain an entry on June 15, 2001, indicating that the arraignment was set for June 20, 2001. Also, the June 20, 2001 minute entry reflects that Mr. Johnson was present and was advised of his rights to a trial by judge or jury.
La.C.Cr.P. art. 831 provides in pertinent part that a defendant must be present at arraignment and when a plea is given. La.C.Cr.P. art. 555 provides, inter alia, that failure to arraign the defendant or the fact that he did not plead is waived if the defendant enters the trial without objecting thereto. In such a case, it shall be considered as if he had pleaded not guilty.
Mr. Johnson has shown no prejudice resulting from the patent error. He did not object to the omission at his arraignment or at trial or on appeal. Because his plea of not guilty can be assumed, the failure of the record to show that he was arraigned on the charges in this case is harmless error. State v. Perez, 98-1407 (La.App. 4 Cir. 11/3/99), 745 So.2d 166.
The second error pertains to Mr. Johnson's sentence for first degree robbery. La. R.S. 14:64.1 provides that any sentence imposed must be served without the benefit of parole, probation, or suspension of sentence. The trial court failed to state these mandatory prohibitions at the original sentencing and at the resentencing as a habitual offender. However, the legislature enacted La. R.S. 15:301.1 to address those instances where offenses contain statutory restrictions on parole, probation, or suspension of sentence but the courts may have failed to include them. La. R.S. 15:301.1(A) provides that in instances where the statutory restrictions are not recited at sentencing, they are included in the sentence given, regardless of whether or not they are imposed by the sentencing court. Furthermore, in State v. Williams, XXXX-XXXX (La.11/28/01), 800 So.2d 790, the Louisiana Supreme Court ruled that this provision self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence, which may *33 result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute. Hence, this Court need take no action to correct the trial court's failure to specify that Mr. Johnson's sentence on count one be served without benefit of parole, probation, or suspension of sentence. The correction is statutorily effected under La. R.S. 15:301.1(A).
No other errors patent was noted.[2]

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, Mr. Johnson contends that the verdict sheets are missing from the record and that this absence constitutes a reversible error patent because it is impossible to review the validity of the verdicts.
As was stated by the Louisiana Supreme Court:
Material omissions from the transcript of the proceedings at trial bearing on the merits of an appeal require reversal. State v. Landry, 97-0499 (La.6/29/99), 751 So.2d 214; Robinson, 387 So.2d at 1144. Although this court has found reversible error when material portions of the trial record were unavailable or incomplete, a "slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal" does not require reversal of a conviction. State v. Brumfield, 96-2667, pp. 14-16 (La.10/28/98), 737 So.2d 660, 669, cert. denied, 526 U.S. 1025, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999); State v. Parker, 361 So.2d 226, 227 (La.1978). A defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcript. State v. Castleberry, 98-1388, p. 29 (La.4/13/99), 758 So.2d 749, 773, cert. denied, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 1999); State v. Hawkins 96-0766, p. 8 (La.1/14/97), 688 So.2d 473, 480.
State v. Boatner, XXXX-XXXX, pp. 4-5 (La.12/3/03), 861 So.2d 149, 153.
Mr. Johnson is correct that the written verdict sheets are not in the appellate record. However, at the conclusion of the trial, the jury returned the verdicts in open court. At that time the trial court stated that it had "reviewed the responsive verdict sheets and find that they are responsive to the Bill of Information and they're correct in form." The court then read the both verdicts into the record, noting specifically that each was "dated today, 6-4-02, New Orleans, Louisiana, signed by the foreperson." The defense did not request polling of the jury or make any type of objection that would indicate that the verdicts were not responsive or differed from what was read into the record by the court. We thus find the absence of the actual verdict sheets from the record was not prejudicial to Mr. Johnson's appellate rights.

ASSIGNMENT OF ERROR NUMBER 2
In his second assignment of error, Mr. Johnson contends that he never met the attorney who represented him at trial, Eric Hessler, until the morning of trial. Mr. Johnson previously was represented by Robert Jenkins, who appeared at other proceedings, including the pretrial motion hearing on August 3, 2001. Mr. Johnson argues that the failure of Mr. Hessler to meet with him prior to the immediate start of the trial constitutes the constructive denial of counsel during the pretrial phase of the proceedings.
*34 The record indicates that both Mr. Jenkins and Mr. Hessler were appointed attorneys from the Orleans Indigent Defender Program. The record does not indicate the reason that Mr. Hessler, as opposed to Mr. Jenkins, appeared at trial as counsel. However, Mr. Hessler continued his representation after trial through both sentencing and the multiple offender proceedings; thus, he apparently had been assigned to that section of the district court.
In State v. Knight, 611 So.2d 1381 (La.1993), the defendant had been represented by the attorney from the indigent defender's office who handled most of the cases for that particular section of criminal court. On the day of trial, the attorney was on vacation; another attorney from the indigent defender's office was in court to cover the vacationing attorney's docket for that day. The trial court refused to grant a continuance even though the second attorney knew nothing about the defendant's case. The trial court denied the motion of defense counsel for an instanter subpoena for one of the arresting officers. Defense counsel presented no defense but cross-examined the state's witnesses. The Supreme Court reversed the defendant's conviction because the trial court constructively denied counsel to the defendant. The court stated:
Although formal appointment of counsel does not satisfy the constitutional guarantee, a short period of time is sometimes sufficient for trial preparation. Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940). Prejudice to a defendant may be presumed when counsel fails to subject the state's case to a meaningful adversary test. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).
Three days, including a Saturday and Sunday, have been held inadequate for Louisiana trial preparation. State v. Winston, 327 So.2d 380 (La.1976). A general appointment of the Public Defender's Office does not justify designating an unprepared attorney from that office on the morning of trial. State v. Simpson, 403 So.2d 1214 (La.1981).
Knight, 611 So.2d at 1383. The court further stated that there was no significant difference between what happened to Knight and the complete absence of counsel, and that the complete absence of counsel was a structural trial defect not subject to a harmless error analysis.
In State v. Laugand, 99-1124 (La.3/17/00), 759 So.2d 34, the Louisiana Supreme Court in a per curiam opinion, reversed the defendant's conviction because the trial judge erroneously denied a motion to continue on the basis that counsel was unprepared. The court noted that counsel participated in the trial, including cross-examining the State's witnesses and arguing the case to the jurors at the close of evidence. However, the court found that the trial court committed reversible error in its denial of the motion to continue because the record showed that defendant's counsel had not prepared and the trial court had to intervene to stop defendant's counsel from pursuing matters directly adverse to the defendant's interests. The court further found that defendant's counsel had failed to complete other tasks essential to the defendant's case.
In State v. Addison, 94-2745 (La.6/23/95), 657 So.2d 974, the defendant had been represented by various attorneys from the public defender's office, and on the morning of trial, the attorney who had represented the defendant only at a bail reduction hearing appeared and moved for a continuance. The trial court denied the continuance and noted that different public defenders had been substituting in and out of the case. The court of appeal refused *35 to consider the denial of the continuance on the grounds that the attorney failed to state specific grounds for the continuance. The Supreme Court granted certiorari to consider the issue of whether the trial judge vented her frustration with the public defender's office by forcing the defendant to trial despite the last minute substitution of an attorney who was not familiar with the case. In another per curium decision, the court found that the record did not establish ineffective assistance and prejudice, but found that a showing by the defendant at a subsequent hearing that his new attorney was totally unprepared might entitle him to a new trial. The court concluded that it was appropriate to affirm the conviction conditionally and to remand for a hearing, in the nature of a hearing on a motion for new trial, to determine whether the defendant received effective assistance of counsel, and if not, to determine whether he suffered prejudice from such failure.
In the above cases, the defense counsel who appeared at trial sought a continuance; however, no such motion was made in this case. Nothing in the trial transcript or minute entries indicates that Mr. Hessler voiced any concerns that he had not known of the upcoming trial or lacked sufficient time to prepare.
This Court has found that the requiring that an O.I.D.P. attorney to represent a defendant at trial, despite not being the original counsel at pretrial matters, does not constitute automatic reversible error. See State v. Hamilton, 02-1281 (La.App. 4 Cir. 12/4/02), 834 So.2d 567, writ denied XXXX-XXXX (La.5/21/04), 874 So.2d 163.
In Hamilton, on the morning of trial and prior to selection of the jury, defense counsel requested a continuance, asserting that she was assigned to the case somewhere between three weeks to three months earlier. She further claimed that she did not have the results of the fingerprint analyses, and noted that at a prior motion hearing there had been some discussion with regard to a hearing to determine the qualifications of the fingerprint expert. She also stated that there was a reference in prior counsel's notes to a statement by one codefendant which tended to exculpate her client, but she had not been able to contact that codefendant, who was in some type of prison security confinement when she attempted to see him. Defense counsel also told the trial court that the defendant had two alibi witnesses who "apparently" were interviewed by the public defender's office, but again she had been unsuccessful in her attempts to contact them. Hamilton, p. 5, 834 So.2d at 570. This Court on appeal upheld the defendant's conviction, distinguishing Knight and a similar case, State v. Simpson, 403 So.2d 1214 (La.1981), in which the public defender moved for a continuance on the morning of trial, stating that he was unaware that his office had been appointed to represent the defendant and that he was unprepared. This Court noted that Hamilton's attorney had admitted she had been appointed to his case since the former O.I.D.P. attorney in the section had left, which was "three months, three weeks, two months," before the trial; she was not sure of the exact time. Hamilton, p. 7, 834 So.2d at 571. The Court further noted that defense counsel thoroughly cross-examined the FBI fingerprint expert, and that the defendant had failed to show that the appointed attorney did not have sufficient time to prepare the defense. Id.
As noted above, Mr. Hessler, trial counsel in this case, did not move for a continuance or in any way indicate that he had been given insufficient time to prepare for the trial. Admittedly, the record does not show when he took over Mr. Johnson's *36 case. A March 7, 2002 minute entry reflects that Mr. Jenkins appeared in court on that date for trial, which was reset to April 2, 2002. Minute entries of April 2, 2002 and May 2, 2002 reflect that trial was reset, but do not indicate the name of the attorney, if any, who appeared with Mr. Johnson. Trial then commenced at the next setting, June 4, 2002. The trial transcript indicates that Mr. Hessler engaged in extensive cross-examination of the witnesses, questioning the police witnesses from their reports, and cross-examining other witnesses about their pretrial motion testimony. Moreover, Mr. Johnson has not indicated that there were any witnesses whom counsel failed to subpoena, or any other evidence that defense counsel failed to put forth but of which his prior counsel had been made aware.
Notably, Mr. Johnson does not argue that his counsel at trial, Mr. Hessler, was actually ineffective; rather, he argues that the change of counsel resulted in a constructive denial of counsel at the pretrial stage, and that no prejudice need be shown. However, Mr. Johnson was represented throughout the proceedings, both pretrial and at trial, by counsel. As a review of the jurisprudence shows that, if Mr. Hessler had requested a continuance because he had been given the case on the eve of trial, the denial of such a request might have constituted reversible error. However, neither the record nor the jurisprudence supports a finding that a mere change in appointed counsel during the course of the proceedings constitutes the denial of counsel at the pretrial stage.

DECREE
For the forgoing reasons, the convictions and sentences of the defendant are affirmed.
AFFIRMED.
JONES, J., dissents in part with reasons.
JONES, J. dissenting in part with reasons.
I respectfully dissent in part from the majority opinion, as I would remand this case to the district court for a hearing on a Motion For a New Trial to determine whether Johnson was prejudiced by late substitution of counsel.
The appellant had one attorney during the earlier stages of the trial, who failed to confer with his client concerning the defense of this case. On the day of trial, however, a new attorney shows up as the appellant's counsel. Although the majority opines that Johnson was not prejudiced by the late substitution of counsel and further notes that representation was adequate because the new counsel merely cross examined the witnesses and others in this matter, this is not sufficient to establish that counsel was effective. What is apparent is that the majority opinion penalizes Johnson because he failed to object or request a continuance so that the new counsel could adequately prepare for trial. However, the majority fails to realize that these measures would be the new attorney's responsibility rather than that of the client. Because I would find from this record that Johnson was denied his Sixth Amendment right to counsel, I respectfully dissent.
NOTES
[1] She was also referred to as Mrs. Kim; the discrepancy in the name was never explained. Also, she testified at the motion hearing and trial without an interpreter, although English was clearly not her first language.
[2] Mr. Johnson in his brief assigns the omission of the jury verdict sheets as an error patent on the face of the record; the issue is discussed elsewhere in this opinion.