ROSEMARY LEDET, Judge.
Lin this criminal case, the defendant, Ron Brown, appeals his conviction and sentence for simple burglary, a violation of La. R.S. 14:62. For the reasons that follow, we affirm his conviction and his sentence of six years. However, we remand this matter to the trial court for the imposition of the statutorily required mandatory fine.

STATEMENT OF THE CASE

On June 8, 2011, the State charged Mr. Brown with one count of simple burglary. On June 14, 2011, he was arraigned and pled not guilty plea. On August 23, 2011, the district court denied Mr. Brown’s motion to suppress the statement and the evidence. On September 29, 2011, a six-member jury found Mr. Brown guilty as charged. On the same day, Mr. Brown filed motions for new trial and for post-verdict judgment of acquittal, which the district court denied. On October 20, 2011, the district court denied Mr. Brown’s re-urged motions for new |2trial and post-verdict of acquittal and sentenced him to six years at hard labor with credit for time served. This appeal followed.[1]

STATEMENT OF THE FACTS

This underlying crime in this case — simple burglary of a storage shed — occurred at about noon — between 12:00 and 12:30 p.m. — on April 29, 2011, at the rear of the building in which the Blue Dot Donut Shop on Canal Street is located. At the time of the offense, the Blue Dot had been in business for only for a short time. Brandon Singleton, one of the Blue Dot’s owners, explained the physical layout of the building in which the Blue Dot was located. The tenants in the building included not only the Blue Dot, but also a law office. Because the donut shop itself was small, he explained that they used an outside storage shed, located in the rear of the building, to warehouse dry goods and supplies — items such as napkins, paper products, soft drinks, and bottled water. The rear shed was not visible from Canal Street; however, the rear shed was visible from the entry to the law office. At trial, Mr. Singleton identified photographs of the gate securing the storage shed area, the door to the shed, the contents of the shed, and the locations of adjacent businesses.[2]
According to Mr. Singleton, on the morning of the incident he unloaded supplies, including several eases of soft drinks and bottled water, from his vehicle into the shed. After placing the items in the shed, he closed the door and went into 13the Blue Dot. About five to ten minutes later, he returned to the shed and found the soft drinks and bottled water (valued at approximately $130.00) were missing. He reported the incident to the police.[3]
*569 Detective Ryan Vaught testified that he and his partner, Detective Amony Ruffins, investigated the burglary at the Blue Dot on the day that it occurred. The detectives met with Mr. Singleton. They were informed that the missing goods were stolen that day between 12:00 and 12:30 p.m. They also were informed of the quantity and the value of the missing goods. After viewing the Blue Dot’s layout and the rear shed, the detectives canvassed the neighborhood for witnesses. They went to the law office and asked the administrative assistant if any clients visited the law office between 12:00 and 12:80 p.m. on that date. Based upon the information they received from the administrative assistant — Mr. Brown’s name, the time he visited the office that day, and his telephone number — the detectives returned to the station and searched the data bases for information on Mr. Brown.
The detectives relocated to Mr. Brown’s residence on Wayside Drive. Although Mr. Brown was not at home, a young boy on a bicycle directed the detectives to his mother, Ms. Anika Butler, who was down the street. The detectives were informed that Ms. Butler was Mr. Brown’s live-in girlfriend. Detective Vaught gave Ms. Butler his business card and asked her to have Mr. Brown call him. Shortly thereafter, Mr. Brown called and spoke with Detective RRuffins. Detective Ruffins asked him to come into the station to speak with her and Detective Vaught. Mr. Brown told her that he could not because he did not have transportation. Detective Ruf-fins offered to provide him with transportation, and he accepted the offer.
When the detectives picked up Mr. Brown from the location that he suggested, Detective Vaught confirmed with Mr. Brown that he was accompanying them on his own free will and further advised Mr. Brown that he could leave at any time. Mr. Brown agreed to accompany the detectives and to give a statement. At the police station, Detective Vaught again confirmed that Mr. Brown understood he was under no obligation to speak to the detectives and that he understood that he could leave the station whenever he wanted to. Mr. Brown related that on April 29, 2011, he received a call from his attorney advising him that a settlement check from his civil suit was ready for him to pick up at the law office. According to Mr. Brown, he rode a bus from his residence to the law office, which was located in the same building as the Blue Dot. He arrived there at approximately 12:30 p.m. He walked directly into his attorney’s office; he denied ever walking to the rear of the building. When Detective Vaught asked him if there was any reason the surveillance camera would show him walking into the rear of the building, Mr. Brown changed his story.[4] He admitted that he walked to the rear of building. He explained that he accidentally walked the wrong way when he exited the law office. When he realized his mistake, he turned around and walked to Canal Street |fito take the bus. At that point, Detective Vaught left the interview room to consult with Detective Ruffins.
Upon returning to the interview room, Detective Vaught advised Mr. Brown of his rights. Mr. Brown signed a waiver of rights form and gave a recorded state *570 ment.[5] After receiving Mr. Brown’s statement, Detective Vaught advised Mr. Brown that he was under arrest for simple burglary and illegal possession of stolen things. Detective Vaught then prepared search warrants for Mr. Brown’s Wayside Drive residence and for his cousin’s residence on Salem Drive. Detective Vaught first executed the warrant on the Salem Drive residence. The residents at that address denied knowing Mr. Brown, and the search of that residence produced no relevant evidence. The subsequent search of Mr. Brown’s Wayside Drive residence produced some of the stolen items—cases of soft drinks and bottled water. Detective Vaught identified photographs of the stolen items as they were located in Mr. Brown’s residence.[6]
On cross-examination, Detective Vaught testified that when he arrived at the scene, the door to the rear shed was ajar, and there was no sign of forced entry.

ERRORS PATENT

A review of the record for errors patent reveals two. The first error concerns Mr. Brown’s sentence. In addition to a term of imprisonment, La. R.S. 14:62 mandates a fine of not more than $2,000, which the district court failed to impose. In State v. Williams, 03-0302 (La.App. 4 Cir. 10/6/03), 859 So.2d 751, this court held that a reviewing court is required to remand for the imposition of a statutorily required fine when the district court fails to impose one.[7] Accordingly, in accordance with this court’s jurisprudence, we are required to remand the case to the district court for the imposition of the statutorily required fine.
The second error involves the waiting period required by La. C.Cr.P. art. 873, which mandates a twenty-four-hour delay before sentencing after the denial of a motion for new trial, unless the waiting period is waived. The record indicates that on October 20, 2011, the district court sentenced Mr. Brown immediately after denying his motions for new trial and post-verdict judgment of acquittal. However, the record further reflects that Mr. Brown waived the Article 873 delay and consented to being sentenced immediately.
COUNSELED ASSIGNMENT OF ERROR NUMBER TWO[8]
Mr. Brown’s second counseled assignment of error is the insufficiency of the evidence. Particularly, his contention is that the evidence is insufficient to support a felony conviction of simply burglary; rather, he contends that the evidence supports only a conviction of misdemeanor theft.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the 17light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable *571 doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4th Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Id. at 1310. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992).
When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from the Jackson reasonable doubt standard; rather, it is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and |scircumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
In the instant case, Mr. Brown was charged with simple burglary pursuant to La. R.S. 14:62, which defines the offense as the unauthorized entering of any dwelling, vehicle, watercraft, or other structure (movable or immovable), or any cemetery, with the intent to commit a felony or any theft therein. Mr. Brown contends that there is no evidence proving that he entered the Blue Dot’s rear shed. Rather, he claims that when he took the drinks, they were stacked outside the shed. It follows, he contends, that the evidence supports only the misdemeanor charge of theft, not the felony charge of simple burglary.
In support of this argument, Mr. Brown points out that Mr. Singleton, one of the owners of the Blue Dot, was the only witness who testified that the stolen drinks were placed inside the shed, yet Mr. Singleton’s testimony conflicted with Detective Vaught’s testimony in two ways. First, Mr. Singleton testified that he placed the drinks inside the shed and closed the door and that he had to reopen the door when he returned to the shed and found the drinks missing. However, Detective Vaught testified that Mr. Singleton advised him that he left the shed door open and that the door was ajar when the detective arrived at the scene. Second, Mr. Singleton testified that the drinks were not in plain view and were not visible from outside. However, Detective Vaught testified that the drinks were in plain view and could be seen by anyone walking by the shed. Mr. Brown contends this 19conflict in the testimony casts doubt on the veracity of Mr. Singleton’s testimony that he placed the drinks inside, as opposed to outside, the shed.
Contrary to Mr. Brown’s argument, the evidence is sufficient to support his conviction for simple burglary. Mr. Singleton’s testimony as to the location of the drinks was not the only evidence on this point. Mr. Brown signed a waiver of rights form and confessed to Detective Vaught that he *572 removed the drinks from inside the shed. Accordingly, the evidence supports the simple burglary conviction. This assignment of error lacks merit.

COUNSELED ASSIGNMENT OF ERROR NUMBER ONE

In this assignment of error, Mr. Brown contends that the district court erred in denying his motion to suppress his statement and the evidence. He contends that his attorney-client privilege was violated when the administrative assistant in his attorney’s office provided Detectives Vaught and Ruffins with his name, the time he visited his attorney’s office the day of the incident, and his telephone number. He contends that without this privileged and protected information, he would not have been a suspect. For the same reason, he would not have made an inculpato-ry statement and a search warrant would not have been executed at his home. He thus contends that because of the violation of his attorney-client privilege, his statement and the evidence seized pursuant to the search warrant should have been suppressed as “fruits of the poisonous tree.” See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
| inThe attorney-client privilege is codified in La. C.E. art. 506 B, which provides:
A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of. the mental, emotional, or physical condition of the client in connection with such a communication.
The comments to Article 506 clarify that privileged communications include only what the client tells the lawyer, what the lawyer tells the client, and the lawyer’s perceptions and observations. Official Comment (i) to La. C.E. art. 506. The comment clarifies that the privilege does not extend to cover any and all information that the lawyer may have received as a result of the attorney-client relationship. Id.
The party seeking to assert the attorney-client privilege has the burden of proving that the privilege is applicable. Cacamo v. Liberty Mutual Fire Ins. Co., 99-1903, 99-1421, p. 8 (La.App. 4 Cir. 10/10/01), 798 So.2d 1210, 1216. A mere statement that the attorney-client privilege applies does not satisfy the burden of proof. Id. (noting that “[t]he party asserting privilege must adequately substantiate the claim and cannot rely on a blanket assertion of privilege.”)
Mr. Brown failed to make a showing that the attorney-client privilege applies. No proof was provided that the alleged privileged information — Mr. Brown’s name, the time he visited the law office on the day of the offense, and his telephone number — was given to Mr. Brown’s civil attorney in confidence. This information was not essential either to obtaining or to rendering professional legal |n services. Moreover, the fact that Mr. Brown filed a civil suit for damages contradicts his argument that his personal information was privileged; the civil suit itself and its contents are public records, allowing anyone access to the information contained therein.
Mr. Brown’s reliance on the attorney-client privilege is further belied by the exception set forth in La. C.E. art. 506 C(6), which provides:
C. Exceptions. There is no privilege under this Article as to a communication:
* * *
*573 (6) Concerning the identity of the lawyer’s client or his representative, unless disclosure of the identity by the lawyer or his representative would reveal either the reason for which legal services were sought or a communication which is otherwise privileged under the Article.
Based on the above principles, we find Mr. Brown’s identity, the time he visited the law office on the date of the offense, and his telephone number were not privileged. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER ONE

In the first of five pro se assignments, Mr. Brown asserts ineffective assistance of counsel. The basis for his contention is that his counsel failed to take pictures of the crime scene. He maintains that had his counsel taken pictures of the scene, “[the pictures] would have shown that the door of the shed [was] open toward the outside of the shed and the cold drinks were lay (sic) by the door, holding the door open. Therefore, [Mr. Brown] took the drinks from the door, without going inside the shed, which will constitute a theft.”
112The general rule is that an ineffective assistance of counsel claim is more appropriately raised in an application for post-conviction relief than on appeal. See State v. Leger, 05-0011, p. 44 (La.7/10/06), 936 So.2d 108, 142. The exception is when the record on appeal contains sufficient evidence to permit the appellate court to decide the issue, and the issue properly is raised by an assignment of error. Id. Under these circumstances, an appellate court may consider the issue in the interest of judicial economy. Id. Such is the case here.
The seminal case addressing the right to effective assistance of counsel is Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, a defendant seeking to establish ineffective assistance of counsel must prove two things: (1) that the defense attorney’s performance was deficient and (2) that the deficiency prejudiced the outcome of the trial. Regarding whether the defense attorney’s performance was deficient, “defense attorneys are entitled to a strong presumption that their conduct fell within the broad range of reasonable professional assistance.” State v. James, 95-962, p. 5 (La.App. 3 Cir. 2/14/96), 670 So.2d 461, 465. Additionally, a defendant must demonstrate that the deficient assistance of counsel prejudiced his defense. State v. Jones, 33,657, p. 11 (La.App. 2 Cir. 8/23/00), 765 So.2d 1191, 1199. Simply stated, the errors must have been so serious as to deprive the defendant of a fair trial. Id. It is insufficient for a defendant to show that the complained-of error had some conceivable effect on the trial’s outcome. Id. Rather, the defendant is required to establish that, but for the 11serror, “there is a reasonable probability the outcome of the trial would have been different.” Id.
Although defense counsel failed to introduce photographs of the crime scene, the State introduced several photographs and had one of the Blue Dot’s owners, Mr. Singleton, verify and explain in detail what the photographs depicted. On cross-examination, defense counsel questioned Mr. Singleton at length concerning what the State’s photographs depicted. Hence, the jury was fully aware of the layout of the Blue Dot and the rear storage shed. Even if defense counsel erred by not introducing evidence that the shed door was “ajar,” as Mr. Brown claims, the error was harmless. The issue of the position of the door being “ajar” is of no concern given Mr. Brown *574 confessed to the detectives that he went into the shed and took the cases of soft drinks and bottled water. Mr. Brown failed to establish that, but for the error, “there is a reasonable probability the outcome of the trial would have been different.” Jones, 33,657 at p. 11, 765 So.2d at 1199. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER TWO

Mr. Brown’s next assignment of error is that the district court erred in refusing to excuse a juror — Robert Blouin — for cause. One of the statutorily provided grounds on which a defendant may challenge a juror for cause is “[t]he juror is not impartial, whatever the cause of his partiality.” La.C.Cr.P. art. 797(2). A prospective juror’s preconceived opinion as to the defendant’s guilt does not mandate a removal for cause if the potential juror expresses an ability to |14disregard that opinion and render a verdict according to the law and evidence. State v. Cousan, 94-2503, p. 10 (La.11/25/96), 684 So.2d 382, 389. A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. However, when a prospective juror has voiced an opinion seemingly prejudicial to the defense, but after further inquiry— often labeled “rehabilitation” — the juror demonstrates the ability and willingness to decide the case impartially according to the law and evidence, a challenge for cause is not warranted. State v. Anthony, 98-406, pp. 22-23 (La.4/11/00), 776 So.2d 376, 391.
A trial court is vested with broad discretion in ruling on challenges for cause, and its ruling will only be reversed when a review of the voir dire record as a whole reveals an abuse of discretion. Id., 98-406 at p. 22, 776 So.2d at 391.
In this case, Mr. Brown contends that during voir dire, Mr. Blouin stated that he felt strongly against thieves, that he could not put his feelings aside, and that he could not be fair at trial. During a conversation with the juror in the judge’s chamber, the following colloquy occurred:
JUDGE: ... the fact that Mr. Brown is charged with simple burglary, is he automatically guilty to you because it’s involving a theft?
JUROR: No, ma’am.
JUDGE: And are you automatically going to convict him because he’s been charged with simple burglary which involves a theft?
JUROR: No, ma’am.
IiJUDGE: And can you wait until you hear all the evidence to determine whether or not he’s guilty of anything?
JUROR: Yes, ma’am.
JUDGE: If Mr. Brown elects no.t to take the stand are you going to hold that against him?
JUROR: No.
[[Image here]]
JUDGE: When you start your deliberation will you factor in the fact that Mr. Brown did not testify to decide whether or not he is guilty or innocent of these charges?
JUROR: No, I understand he has the right not to take the stand.
JUDGE: And so, during the course of the voir dire process you talked about how you had issues with thieves.
JUROR: Yes.
JUDGE: If Mr. Brown were to take the stand and he admitted to being a thief at some point in his life, would that *575 then color how you felt about him as it relates to this particular case?
JUROR:. No, because I understand it’s about this particular case.
[[Image here]]
Defense counsel: You said that you believe Mr. Brown has an interest in his testimony and would treat him differently than other witnesses. Is that correct?
JUROR: Well, I guess that would be true of any defendant on the stand.
Defense counsel: So any defendant you take his testimony differently than you would other witnesses’ testimony?
JUROR: Well, yes, I guess so because, I mean, because everyone charged with a crime, they’re most likely to be dishonest in their testimony.
JUDGE: What if I told you that the law says that you have to treat every witness the same, including the police officers, lay witnesses and Mr. Brown, that you judge their credibility on what they state to you? Now if any of those witnesses say something to |iayou that you believe is unworthy of belief you have the right to throw out that, as well as all parts of their testimony.
JUROR: I don’t think I would be inclined to think that somebody is lying just because they are Mr. Brown in the case. I would try to give them the same doubt that any other witnesses would be given.
[[Image here]]
JUDGE: Thank you, sir. You can return to the courtroom. That challenge for cause is denied.
As with the other jurors, Mr. Blouin was instructed on the law applicable to this case. The trial judge specifically asked Mr. Blouin if he could set aside his feelings and assess the credibility of the witnesses and the evidence fairly, to which he responded yes. The trial judge also asked whether Mr. Blouin would view Mr. Brown negatively if he had a criminal history, or if he did not testify at trial. Mr. Blouin answered no, and he never indicated an inability or unwillingness to follow the law. Mr. Brown’s contention that Mr. Blouin should have been excused lacks support. The record reflects that the trial judge rehabilitated Mr. Blouin. An appellate court is bound to give deference to a trial court’s ruling on jury challenges because it “ ‘has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questioning.’ ” Anthony, 98-406 at p. 25, 776 So.2d at 392 (quoting State v. Lee, 93-2810, p. 9 (La.5/23/94), 637 So.2d 102, 108). This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER THREE

Mr. Brown’s third pro se assignment contests the trial judge’s refusal to grant the defense’s motion to continue the trial. The decision to grant or deny a continuance lies within “the sound discretion of the trial judge, and a reviewing court will not disturb such a determination absent a clear abuse of discretion.” State v. Johnson, 96-0950 (La.App. 4 Cir. 2/4/98), 706 So.2d 468, 478-79 (on reh’g); see also State v. Martin, 93-0285, pp. 10-11 (La.10/17/94), 645 So.2d 190, 197 (“The decision to grant or deny a motion for 117continuance lies within the wide discretion of the trial court.”). To demonstrate that the trial court erred in denying a continuance, a showing of specific prejudice is generally required. State v. Holmes, 590 So.2d 834 (La.App. 4th Cir.1991).
Mr. Brown contends that the district court’s denial of his motion to continue resulted in either a constructive denial of *576 counsel or, at a minimum, an ineffective assistance of counsel. Mr. Brown’s trial counsel sought a continuance on the first day of trial — Monday, September 19, 2012 — on grounds that she was unable to visit her client the weekend before trial. Discussing whether to grant a continuance, the trial judge, in her chamber, advised all counsel as follows:
For the record there have been multiple requests for continuance in this case. It’s my understanding that the defense learned from Mr. Brown that he intends to testify at trial. And due to the change in the visitation schedule at the Sheriffs Office, the defense did not have an opportunity to meet with Mr. Brown to prepare him for his testimony today. So I will allow the jury to be selected today and we will send them home and we will start at 8:30 a.m. Wednesday (September 21, 2011) morning with this trial.
The trial judge also noted that defense counsel had met with Mr. Brown at least once prior to the September 19, 2011 trial date.
The record in this case does not reveal errors that would lead this court to conclude that Mr. Brown was constructively denied counsel. In fact, the record 118shows that defense counsel had served on the case since Mr. Brown’s arraignment on June 14, 2011. Counsel represented Mr. Brown at the preliminary hearing on July 25, 2011, and at the hearing on the motions to suppress the statement and evidence on August 23, 2011 — during which, as the transcript indicates, counsel presented evidence and appeared well-prepared. Trial counsel was joined by another attorney at trial one month later, on September 21, 2011, during which the defense gave argument, made objections, and thoroughly questioned the state’s witnesses. While trial counsel has a professional, ethical, and legal duty to confer with her client, her failure to do so prior to trial does not amount to a “constructive” denial of counsel. See State v. Johnson, 04-0178, p. 9 (La.App. 4 Cir. 12/8/04), 892 So.2d 28, 33. While trial counsel has a professional, ethical, and legal duty to confer with her client, her failure to do so prior to trial does not amount to a “constructive” denial of counsel. Id.; see also State v. Ford, 09-0392, pp. 4-5 (La.App. 4 Cir. 10/21/09), 24 So.3d 249, 252-53.
Although the Mr. Brown argues that the district court abused its discretion by refusing to grant him a continuation, the district court accommodated Mr. Brown and granted him a two day recess of trial. Mr. Brown has failed to make a showing that either the district court abused its discretion or that his rights were specifically prejudiced, which would have entitled him to relief. See State v. Holmes, 590 So.2d 834 (La.App. 4 Cir.1991). This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER FOUR

|19In his fourth pro se assignment of error, Mr. Brown contends that the district court committed reversible error by failing to instruct the jury on the definitions of burglary and unauthorized entry of a business. Moreover, he contends that the trial judge failed to charge the jury as to the responsive verdicts to the charge of simple burglary.
The trial court is required to instruct the jury as to the law applicable to each case. La.C.Cr.P. art. 802. This rule has been interpreted as requiring the trial court to charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. State v. Parker, 10-1277, p. 15 (La.App. 4 Cir. 9/21/11), 76 So.3d 55, 64, writs denied, 11-2339 (La.3/9/12), 84 So.3d 551, and 11-2478 *577 (La.7/27/12), 93 So.3d 586. The record established that Mr. Brown’s contentions regarding the district court’s failure to properly charge the jury are incorrect.
The district court instructed the jury not only on the definitions of burglary and unauthorized entry of a business, but also on theft. The court advised:
• [I]n order to convict Mr. Brown of simple burglary, you must find: (1) that Mr. Brown entered the structure; and (2) that Mr. Brown was not authorized to enter the structure; and (3) that Mr. Brown entered with the specific intent to commit a felony or a theft within the structure.
• Unauthorized entry into a place of business is the intentional entry by a person without authority into any structure belonging to another and used in whole or in part as a place of business.
• Theft is the taking of anything of value which belongs to another when the offender has a specific intent to deprive the other permanently of the thing taken. Anything of value must be given the broadest possible construction, including any conceivable thing of the slightest value.
|anAnd as for responsive verdicts, the trial court specified:
• If you are not convinced that Mr. Brown is guilty of the offense charged, you may find Mr. Brown guilty of a lesser offense, if you are convinced beyond a reasonable doubt that Mr. Brown is guilty of a lesser offense.
• In this case the lesser included responsive offenses are guilty of attempted simple burglary, guilty of unauthorized entry of a place of business, guilty of attempted unauthorized entry of a place of business and not guilty.
The record contains the entire jury instructions. The district court instructed the jury as to simple burglary, unauthorized entry of a business, theft, and the responsive verdicts as to lesser and included offenses. Thus, the jury was aware that instead of a simple burglary verdict, it could have found Mr. Brown guilty of attempted simple burglary, guilty of unauthorized entry of a place of business, guilty of attempted unauthorized entry of a place of business, and not guilty. The jury apparently found unpersuasive Mr. Brown’s argument that he could only be found guilty of theft because the door to the shed was ajar and that the drinks were outside of the shed. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER FIVE

In his final pro se assignment, Mr. Brown argues that his six year sentence is unconstitutionally excessive. A sentence is constitutionally excessive if it is grossly out of proportion to the severity of the crime and is nothing more than purposeless imposition of pain and suffering. State v. Landry, 03-1671, pp. 7-8 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235, 1239. A trial judge has broad discretion in imposition of sentences within statutory limits but shall “state for the record the considerations taken into account and the factual basis therefor in imposing sentence.” La. C.Cr.P. art. 894.1 C. Even a sentence within the statutory |21limit may violate a defendant’s constitutional right against excessive punishment. State v. Dorthey, 623 So.2d 1276, 1280 (La.1993). Thus, imposition of a sentence within the statutory limit may be reviewed on appeal. State v. Caston, 477 So.2d 868 (La.App. 4th Cir.1985). Although rigid compliance with Article 894.1 has been deemed unnecessary where the record clearly shows an adequate factual basis for the sentence imposed, the record should reflect the consid *578 erations taken into account by the trial court in determining the sentence to aid the reviewing court in determining whether the sentence is warranted in light of the particular circumstances of the case. See State v. Quebedeaux, 424 So.2d 1009 (La.1982); State v. Lanclos, 419 So.2d 475 (La.1982).
The maximum sentence for simple burglary is imprisonment for not more than twelve years, with or without hard labor and a fíne of not more that twelve thousand dollars. La. R.S. 14:62. In this case, the district court imposed on Mr. Brown a mid-range sentence of incarceration of six years at hard labor. (As noted elsewhere in this opinion, the district court failed to impose a mandatory fine.) Additionally, although the district court did not express reasons for the sentence imposed, the record clearly shows an adequate factual basis for the sentence — Mr. Brown’s confession.[9] Therefore, considering the jurisprudence and the totality of the circumstances of this case, we cannot conclude that Mr. Brown’s six year sentence is excessive. This assignment of error is without merit.
12 ¿DECREE
For the forgoing reasons, the defendant’s conviction and six year sentence are affirmed. However, this matter is remanded to the trial court for the imposition of the statutorily required mandatory fine.
AFFIRMED; REMANDED FOR IMPOSITION OF MANDATORY FINE

.Although the State indicates in its brief that it has since filed a multiple bill against Mr. Brown, the multiple bill is not part of the record on appeal.

. Copies of the pictures were not included in the record on appeal.

. Mr. Singleton was a New Orleans Police Department ("NOPD”) officer. He first called his NOPD lieutenant to find out if his *569 own district should handle the matter or if the Third District in which the Blue Dot was located should handle it. He was instructed that the Third District should handle it. He then called the Third District, and two detectives were sent out to handle the investigation.

. The area was not in fact under camera surveillance.

. As the jury listened to the audiotape of the statement, it read the transcription.

. Copies of the pictures were not included in the record on appeal.

. See also State v. Cook, 09-0311, pp. 3-4 (La.App. 4 Cir. 8/12/09), 19 So.3d 15, 16-17; State v. Brown, 03-2155, p. 5 (La.App. 4 Cir. 4/14/04), 895 So.2d 542, 545, State v. Stephens, 09-0631, 09-632, p. 10 (La.App. 4 Cir. 11/24/09), 27 So.3d 987, 993; State v. Copelin, 07-0790, p. 4 (La.App. 4 Cir. 12/12/07), 974 So.2d 49, 51.

.When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Marcantel, 00-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55; State v. Hearold, 603 So.2d 731, 734 (La.1992).

. Other circuits have found six year sentences, and greater, not excessive for a conviction for simple burglary. See State v. Parker, 594 So.2d 3 (La.App. 5th Cir.1992) (sentence of six years at hard labor); State v. Burns, 44,937 (La.App. 2 Cir. 2/2/10), 32 So.3d 261 (sentence of twelve years at hard labor); State v. Mouton, 12-836 (La.App. 3 Cir. 2/27/13), - So.3d -, 2013 WL 690835 (defendant sentenced to twelve years).